**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GRUMPY CAT LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, <br><br> Defendants. | Case No. 24-cv-2702 <br><br> Judge Jorge L. Alonso <br><br> Magistrate Judge M. David Weisman |

**MEMORANDUM IN RESPONSE TO ORDER OF MAY 29, 2025 [DKT. NO. 133]**

Plaintiff GRUMPY CAT LIMITED ("Plaintiff" or "GRUMPY CAT") submits the following Memorandum in Response to this Court's May 29, 2025, Order directing Plaintiff to show cause why the preliminary injunction should not be lifted against the remaining defendants. [Dkt. No. 133], and in support, Plaintiff states as follows:

**A. PROCECURAL BACKGROUND**

On April 4, 2024, Plaintiff filed a Complaint against two hundred fifty (250) defendants including Defendant Nos. 86 "More than Myriad", 103 "Neogaia Creations" and 173 "Smartypaints" for trademark infringement and counterfeiting (Count I); false designation of origin (Count II); copyright infringement (Count III) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV). [Dkt. No. 1]. Concurrently with the filing of the Complaint, Plaintiff filed a Motion for Entry of a Temporary Restraining Order ("TRO") and

supporting Memorandum [Dkt. Nos. 10, 11] which was granted on April 9, 2024. [Dkt. Nos. 39, 40].

On May 2, 2024, Plaintiff filed a Motion for Entry of a Preliminary Injunction and supporting Memorandum. [Dkt. Nos. 45, 46]. Also on May 2, 2024, Plaintiff served the defendants with process and provided them with copies of the summons, complaint, TRO, Motion for Entry of a Preliminary Injunction and supporting Memorandum. [Dkt. No. 49]. Plaintiff's Motion for Entry of a Preliminary Injunction was granted on May 7, 2024. [Dkt. Nos. 52, 53].

On September 4, 2024, Plaintiff filed its Motion for Entry of Default and Default Judgment and supporting Memorandum [Dkt. Nos. 82, 83] which was granted on September 10, 2024. [Dkt. Nos. 89, 90, 109].

On November 27, 2024, Defendant No. 173 "Smartypaints" filed a Motion to Vacate the Default Judgment. [Dkt. No. 115].

On December 17, 2024, Defendant No. 103 "Neogaia Creations" filed a Motion to Dismiss. [Dkt. No. 119]. On May 7, 2025, Defendant No. 103 "Neogaia Creations" filed a Motion to Vacate the Default Judgment. [Dkt. No. 126].

On March 28, 2025, Defendant No. 86 "More than Myriad" filed a Motion to Set Aside the Default Judgment. [Dkt. No. 125].

On May 16, 2025, this Court granted the Motions to Vacate Default Judgment filed by Defendant Nos. 86 "More than Myriad", 103 "Neogaia Creations" and 173 "Smartypaints". [Dkt. No. 129].

On May 29, 2025, this Court ordered Plaintiff to show cause as to why the preliminary injunction should not be lifted against the remaining defendants. [Dkt. No. 133].

### B. DISCUSSION

On April 4, 2024, Plaintiff filed a Complaint against Defendant Nos. 86 "More than Myriad", 103 "Neogaia Creations" and 173 "Smartypaints" ("Defendants") for infringing Plaintiff's GRUMPY CAT Trademarks and Copyrights. As a result, Plaintiff is entitled to injunctive relief to prevent the continued infringement of its intellectual property by Defendants.

#### a. Plaintiff Has Met the Standards for a Preliminary Injunction

The preliminary injunction previously entered against Defendants should remain in effect because it was properly granted and to prevent further unlawful conduct by Defendants. A preliminary injunction may be issued upon showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiffs' favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996).

#### b. Plaintiff Is Likely to Succeed on Its Trademark Infringement and Counterfeiting Claims

The preliminary injunction should remain in effect against the Defendants because Plaintiff is likely to succeed on its trademark infringement and counterfeiting claims. To prove a *prima facie* case of trademark infringement, a plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademarks; and (3) Defendants' use of the trademarks cause a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005). Plaintiff satisfies all three requirements and as a result, the preliminary injunction properly entered against the Defendants on May 7, 2025 [Dkt. Nos. 52, 53] should remain in effect.

As to the first element, Defendant No. 86 "More than Myriad" infringes U.S. Trademark Registration No. 4,907,212 for the word mark in Class 16 which cover "stickers" like the one sold by Defendant. *See* Group Exhibit A – Trademark Registrations and Exhibit B – Evidence of Infringement (More than Myriad). Defendant Nos. 103 "Neogaia Creations" and 173 "Smartypaints" infringe U.S. Trademark Registration No. 4,417,549 for the word mark in Classes 22 and 39 which cover "clothing, namely t-shirts" like those sold by Defendant Nos. 103 "Neogaia Creations" and 173 "Smartypaints" *See* Exhibit A – Trademark Registration,  Exhibit C – Evidence of Infringement (Neogaia Creations) and Exhibit D – Evidence of Infringement (Smartypaints). All three Defendants use the GRUMPY CAT word mark to give the impression that Defendants' unauthorized t-shirts and stickers are sponsored by or endorsed by GRUMPY CAT LIMITED.

Plaintiff satisfied the second element because Plaintiff has not licensed or authorized and of the Defendants to use the GRUMPY CAT work marks, nor are Defendants authorized retailers of genuine GRUMPY CAT Products. *See* Exhibit E – Declaration of Bryan B. Bundesen, ¶ 11. Plaintiff's marks have been continuously used and never abandoned. *Id.* at ¶ 8.

With regard to the third factor, the Seventh Circuit has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendant to palm off their products as that of another. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d, 456, 461-462 (7th Cir. 2000).

In the present case, Plaintiff has satisfied all of the elements of the likelihood of confusion test. All three Defendants used the GRUMPY CAT Trademarks in the marketing of their t-shirts and stickers, thus satisfying the first and second likelihood of confusion factors.

Plaintiff also satisfies the third factor because Plaintiff and its licensees sell authentic GRUMPY CAT t-shirts and stickers. Defendants are selling unlicensed products online through their e-commerce stores on Redbubble, which satisfies the third confusion factor in favor of Plaintiff. *See* Exhibits B - D.

Plaintiff satisfies the fourth factor because consumers purchasing GRUMPY CAT Products are not restricted to a specialized group of consumers. Rather, consumers are a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001). As such, consumers for the GRUMPY CAT brand are likely to be confused, so this factor favors Plaintiff.

Due to its long-standing use and wide acceptance by the public, Plaintiff's mark has become famous and associated with high quality GRUMPY CAT Products. GRUMPY CAT LIMITED acts as the sales, marketing, design and distribution arm of GRUMPY CAT products worldwide and GRUMPY CAT LIMITED is the official source of GRUMPY CAT Products. Exhibit E, ¶¶ 3,4. Thus, given its well-known name, the fifth factor, the strength of the mark, also weighs heavily in favor of Plaintiff.

As for the sixth factor, Plaintiff does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995). In the

present case, actual confusion can be inferred because Defendants are selling unlicensed and unauthorized GRUMPY CAT Products in connection with the GRUMPY CAT word marks, which is likely to confuse consumers to believe that Defendants' products are genuine GRUMPY CAT Products or are sponsored or endorsed by Plaintiff. As such, Plaintiff satisfies the sixth factor in the likelihood of confusion test.

Regarding the seventh and final factor, Defendants intentionally used the GRUMPY CAT Trademarks to confuse and deceive the consuming public into thinking that Defendants' unlicensed products are manufactured by or are sponsored by GRUMPY CAT. Defendants purposefully attempt to benefit and trade off Plaintiff's goodwill and reputation. Therefore, the final factor regarding Defendant's intent is satisfied by Plaintiff.

In sum, each of the seven likelihood of confusion factors were satisfied by Plaintiff, and, as a result, Plaintiff proved that it has a valid claim for trademark infringement and counterfeiting against Defendants.

c. **Defendants' Use of the GRUMPY CAT Trademarks is Not Descriptive**

Defendants selectively chose language to lead consumers to believe that their advertised GRUMPY CAT Products are either made by, associated with or endorsed by Plaintiff. Defendants used the GRUMPY CAT word marks with an intent to mislead or to falsely suggest an affiliation with the GRUMPY CAT brand. Defendants could have used other descriptive terms to identify its products, but doing so would not have resulted in the increased web traffic that is associated with using the GRUMPY CAT name. Defendants' actions cause confusion in the marketplace, divert sales away from Plaintiff and for the consumers who purchased Defendants' inferior products, caused damage to Plaintiff's goodwill and reputation.

6

"A trademark includes: any word, name, symbol, or device, or any combination thereof [used by any person] to identify and distinguish his or her goods, including a unique product, from those manufactured and sold by others and to indicate the source of the goods, even if that source is unknown." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001). "Hence, although a term's "primary" meaning is merely descriptive, if through use the public has come to identify the term with a plaintiff's product or service, the words have acquired a "secondary meaning" and would become a protectible trademark. In other words, 'secondary meaning' denotes an association in the mind of the consumer between the trade dress [or name] of a product and a particular producer." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1085 (7th Cir. 1988).

In the present case, Plaintiff's GRUMPY CAT Trademarks have acquired secondary meaning "i.e., has become distinctive of the plaintiff's goods and/or services." *Id.* at 1085. Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the GRUMPY CAT Trademarks. *See* Exhibit E at ₱ 9. As a result, products associated with the GRUMPY CAT Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from GRUMPY CAT LIMITED. *Id.* Defendants could have used many descriptive terms other than the ones registered to Plaintiff to advertise and sell their infringing products, but chose against doing so because they would have forfeited the increased web traffic that the GRUMPY CAT Trademarks bring. Defendants' use of Plaintiff's GRUMPY CAT Trademarks are not descriptive and Defendants' use of Plaintiff's GRUMPY CAT Trademarks hurt Plaintiff's goodwill and reputation and deprives Plaintiff of sales. As a result, the preliminary injunction against Defendant should remain in place.

**d.  There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademark and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

The harm caused by the infringement of the GRUMPY CAT Trademarks by Defendants is equally damaging.  The infringement deprives Plaintiff of the ability to control the creative content protected by its trademarks, it devalues the GRUMPY CAT brand by associating it with inferior quality goods and it undermines the value of its trademarks by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop additional markets for its products. *See* Exhibit E, ¶¶ 20, 21. These are recognized irreparable harms for which monetary compensation is inadequate.  *See MGM Studios, Inc. v. Grokster, Ltd.,*

518 F.Supp. 2d 1197, 1219 (C.D. Cal. 2007). Defendants' unauthorized use of Plaintiff's word marks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *See* Exhibit E at ¶¶ 18-21.

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting halting Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss or damage if the preliminary injunction is lifted against Defendants.

### e. The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next consider the harm that Defendant will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby

derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

Thus, the balance of equities tips decisively in Plaintiff's favor and equity requires that the injunction currently in place against Defendants should remain.

### f.   Issuance of the Injunction is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark laws. The public is currently under the false impression that Defendants are operating their internet stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976).

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owners of the

trademarks used in connection with those goods and services. Unless Defendants' unauthorized use Plaintiff's word marks are enjoined, the public will continue to be confused and misled by Defendants' conduct. For these reasons, the public interest is best served by keeping the preliminary injunction in place against Defendants.

### C. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court leave the preliminary injunction that was properly entered on May 7, 2025, as to Defendant Nos. Nos. 86 "More than Myriad", 103 "Neogaia Creations" and 173 "Smartypaints" or for any other relief this Court deems appropriate.

Respectfully submitted,

Dated: June 12, 2025

By: s/Michael A. Hierl_____
   Michael A. Hierl
   William B. Kalbac
   Robert P. McMurray
   John Wilson
   Hughes Socol Piers Resnick & Dym, Ltd.
   Three First National Plaza
   70 W. Madison Street, Suite 4000
   Chicago, Illinois 60602
   (312) 580-0100 Telephone
   mhierl@hsplegal.com
   wkalbac@hsplegal.com
   rmcmurray@hsplegal.com
   Attorneys for Plaintiff
   GRUMPY CAT LIMITED

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Response was electronically filed with the Clerk of the Court, served by publication and email to the Defendants identified in Schedule A and served on all counsel of record and interested parties via the CM/ECF system on June 12, 2025.

*/s/ Michael A. Hierl*
Michael A. Hierl